UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| JEREMIAH MYERS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:18-cv-39-TWP-SKL |
| ) | |
| A.J. CUNNINGHAM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is a Motion for Disclosure of Information from the Public Defender of the Twelfth Judicial District of Tennessee, with a supporting memorandum, filed by Defendants A.J. Cunningham and Charlie Wilder ("Defendants") [Docs. 32 & 33].[1] The motion relates to a subpoena duces tecum Defendants served on the office of Public Defender Jeffrey Harmon ("PD Harmon") on May 17, 2019 [Doc. 33-2]. PD Harmon filed a response[2] [Doc. 39], and Defendants filed a reply [Doc. 42-1]. The Court conducted a hearing on the motion on August 16, 2019. This matter is now ripe.

For the reasons stated below, the Court will **GRANT** Defendants' motion [Doc. 32] to the extent it seeks production of the seven audio recordings PD Harmon has in his client files. PD Harmon will be **ORDERED** to produce the recordings after the entry of a protective order as set

---

[1] Tracy City, Tennessee, a defendant in this case, did not file a response to the motion, but did participate in the hearing.

[2] On July 16, 2019, the Court entered an Order [Doc. 37] requiring PD Harmon to show good cause as to why he had not then responded to the motion. Defendants then revealed they had neglected to serve PD Harmon with the motion [Doc. 38]. Once served, PD Harmon fully responded. Accordingly, the Court **FINDS** the Order to Show Cause [Doc. 37] has been fully **SATISFIED**.

forth herein.

I. BACKGROUND

This is a malicious prosecution/municipal liability civil rights case. In their original complaint, Plaintiffs Clarissa and Jeremiah Myers ("Plaintiffs") claimed Defendants conspired with a confidential informant named Tina Prater ("CI Prater") to generate false evidence showing Plaintiffs were drug dealers. Specifically, Plaintiffs claim Defendants paid CI Prater to arrange for third parties to impersonate Plaintiffs in fake recorded drug buys.[3] Plaintiffs were arrested in August 2017 allegedly based on the evidence obtained by CI Prater. Clarissa was charged with eight counts of sale of a schedule II drug, and Jeremiah was charged with one count of sale and one count of delivery of a schedule II drug, all felonies. All charges against Plaintiffs were eventually dismissed. Attached to the pending motion is a handwritten note purportedly authored by CI Prater confessing to a conspiracy with Defendants [Doc. 33-1].

As Defendants explain in the motion, Plaintiffs' arrests were part of a larger sting operation, with 19 people arrested in total. PD Harmon represented several of these individuals in state criminal court, but not Plaintiffs. An investigator working for PD Harmon, Stacey Williams, interviewed some or all of the individuals allegedly recruited by CI Prater to participate in the staged drug buys. PD Harmon indicates he has seven audio recordings of these interviews stored in his client files. According to Defendants, the charges against all but two of the 19 people arrested in connection with this sting operation were dismissed. Defendants assert, and PD Harmon does not dispute, that all charges against each of his clients were dismissed.

---

[3] Plaintiffs have since been granted leave to file an amended complaint [Doc. 51]. Among other things, the amended complaint alleges in the alternative that, even if Defendants did not actively conspire with CI Prater, they knew or should have known she was not a reasonably reliable informant and they should have corroborated any information they obtained from her, but they did not [Doc. 52].

2

On May 17, 2019, Defendants served a subpoena duces tecum on PD Harmon, seeking production of "[a]ny recorded statements, transcripts of recorded statements or summaries of recorded statements of Tina Prater or other persons who claim to have posed as persons selling drugs to Tina Prater," contained within Mr. Harmon's client files[4] [Doc. 33-2]. PD Harmon objected by letter dated May 31, 2019, citing Tennessee Rule of Professional Conduct 1.9(c), and the "work product privilege." [Doc. 33-3]. Thereafter, Defendants filed the instant motion.

## II. ANALYSIS

### A. Tennessee Rules of Professional Conduct

Tennessee Rule of Professional Conduct 1.9 provides:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless: (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

Tenn. Sup. Ct. R. 8, RPC 1.9(c).

Rule 1.6, in turn, requires lawyers to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes disclosure is necessary . . . to comply with an order of a tribunal requiring disclosure," but first the lawyer must assert "all non-frivolous claims that the information . . . is protected against disclosure by the attorney-client privilege or other applicable law." *Id.* RPC 1.6(c)(2). The Court finds that PD Harmon has fulfilled his duty under Rule 1.6(c)(2) by his objection to the subpoena and his response in opposition to the motion.

---

[4] Defendants contend Plaintiffs also served PD Harmon with a subpoena, in which Plaintiffs sought production of the entire client files for each of PD Harmon's clients involved in the sting. Plaintiffs have not filed any motion related to their subpoena. During the hearing, Plaintiffs seemed to indicate they did not intend to pursue further information from PD Harmon.

3

Accordingly, he may produce the recordings pursuant to this Order without violating Rule 1.9(c).

### B. Federal Rule of Civil Procedure 26(b)(3)

Defendants and PD Harmon both cite Federal Rule of Civil Procedure 26(b)(3), which provides:

> (3) *Trial Preparation: Materials*.
>
> > (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> >
> > > (i) they are otherwise discoverable under Rule 26(b)(1); and
> > >
> > > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).

Courts analyze Rule 26(b)(3) arguments using a sequential process. *See Toledo Edison Co. v. G A Techs., Inc., Torrey Pines Tech. Div.*, 847 F.2d 335, 339 (6th Cir. 1988), *superseded on other grounds* as stated in *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697, 713-14 (6th Cir. 2006). First, the requesting party must show the requested materials are relevant. The burden then shifts to the objecting party to show the material was prepared in anticipation of litigation or trial. The burden then shifts back to the requesting party to show they have a "substantial need" for the materials to prepare their case, and they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means" that are "less intrusive to the lawyer's work." *Id.* at 340-41. If the requesting party meets their burden at the third step, they are generally

4

entitled to discovery of the materials, but the court must prohibit discovery of any "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation" contained within the materials. *Id.* at 340.[5]

Rule 26(b)(3) also provides that any "party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter." Fed. R. Civ. P. 26(b)(3)(C). A "previous statement," includes "a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement." *Id.* (b)(3)(C)(ii).

### C. Rule 26(b)(3) Does Not Apply to the Recordings.

The United States Court of Appeals for the Sixth Circuit has held that "Rule 26(b)(3), 'on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 19 F.3d 1432, 1994 WL 58999, at *4 (6th Cir. Feb. 25, 1994) (quoting *In re Cal. Pub. Util. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989)) (other citations omitted); *see also F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25-26 (1983) (Rule 26(b)(3) protects materials prepared for earlier litigation "as long as they were prepared **by or for a party to the subsequent litigation**." (emphasis added)); *Bryant v. Ferrellgas, Inc*. Nos. 07-10447, 07-13214, 2008 WL 2478319, at *1-2 (E.D. Mich. June 17, 2008) (Rule 26(b)(3) applies only to materials prepared for or by parties (citations omitted)); 8 Wright & Miller, Federal Practice & Procedure § 2024 (3d ed. April 2019 update) ("Documents prepared for one

---

[5] PD Harmon does not argue the recordings are not relevant, nor does he claim the recordings contain any of his mental impressions, conclusions, opinions, or legal theories. Defendants do not dispute the recordings were made in anticipation of the related criminal cases. Defendants' arguments are framed to suggest the issues to be considered at the third step are in dispute—substantial need, substantial equivalent, undue hardship—and PD Harmon does not argue that Defendants have failed to meet this step, either.

5

who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit . . . .").

The authorities cited by PD Harmon (who is asserting the "work product privilege") do not persuade the Court otherwise. In *Toledo Edison*, the subpoenaed documents were created and held by a third party, but the third party created them for the plaintiff regarding the incident that was the subject of the litigation. 847 F.2d at 336 (6th Cir. 1988) (holding trial court erred in denying plaintiff's motion to quash subpoena of expert). In *In re Powerhouse Licensing, LLC*, a fraudulent transfer action, a judgment creditor sought to depose an attorney involved in structuring the disputed asset transfers. 441 F.3d 467 (6th Cir. 2006) (ultimately concluding any work-product privileged was waived). The transfers were all between "Powerhouse" entities, with Powerhouse Gyms, Powerhouse Products, and Powerhouse Body Building Gyms as transferors, and three newly-formed companies—Powerhouse Licensing, Powerhouse Marks, and Powerhouse Merchandising—as transferees. 441 F.3d at 469-70. The attorney in question represented the three newly-formed transferee companies, which were all named parties in the fraudulent transfer action.

Nevertheless, as at least one district court in the Sixth Circuit has explained, the conclusion that Rule 26(b)(3) does not apply to non-party discovery does not "compel the conclusion that a non-party has **no** work product shield." *Lawrence ex rel. Estate of Hoffman v. Madison Cty.*, No. 5:13-CV-383-GFVT-REW, 2015 WL 13636281, at *4 (E.D. Ky. Feb. 24, 2015) (emphasis added). Rather, Rule 26(b)(3) "only partially codifies" the work-product doctrine famously announced in *Hickman v. Taylor*, 329 U.S. 495 (1947). *Lawrence*, 2015 WL 13636281, at *4 (quotation marks omitted) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010)). In *Hickman*, the Supreme Court acknowledged that "[p]roper preparation of a client's case demands that he

6

assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." 329 U.S. at 511. Hence, the work product privilege was born. The Court distinguished between recorded witness statements taken by a lawyer and the lawyer's "mental impressions or memoranda," finding the trial court had discretion to order production of the former, but not the latter. *Id.* at 512-13.

Although *Hickman* itself involved a discovery dispute between parties (and thus would fall under Rule 26(b)(3)), courts have extended work-product protection to non-parties when doing so "vindicated the purposes" underlying *Hickman*. *See Schomburg v. N.Y.P.D.*, 298 F.R.D. 138, 142 (S.D.N.Y. 2014); *see also Lawrence*, 2015 WL 13636281, at *5 ("Thus, even when Rule 26(b)(3) might textually withhold protection in civil discovery of a prior criminal prosecution, courts have . . . looked to common-law work product underpinnings to assess propriety of discovery." (citation omitted)). Courts identify those purposes as: (1) "protecting an attorney's ability to formulate legal theories and prepare cases," (2) "preventing opponents from 'free-loading' off their adversaries' work," and (3) "preventing interference with ongoing litigation." *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 144 (D. Mass. 2014) (citations omitted).

None of the purposes underlying *Hickman* would be served by prohibiting disclosure of the recordings at issue in this case and PD Harmon has not contended otherwise. The recordings are of interviews with individuals who allegedly performed the fake drug buys with CI Prater, and are therefore within the scope of discovery under Rule 26. There is no ongoing criminal litigation. PD Harmon does not claim the recordings reveal his mental conclusions, impressions, or thoughts in any way. *See Nam v. U.S. Xpress, Inc.*, No. 1:11-cv-116, 2012 WL 12840094, at *3 (E.D. Tenn. May 15, 2012) ("[The plaintiffs], however, have offered no proof, such as an affidavit from counsel, that the videotaped statements actually contain any mental impressions, conclusions,

opinions, or legal theories of counsel concerning the litigation."). Producing the recordings for copying is a minimal burden on PD Harmon's office. Finally, PD Harmon does not represent an adversary to any of the parties involved in this case, and no party in this case has any reason to "free load" off the work PD Harmon did in the criminal cases. *See Lawrence*, 2015 WL 13636281, at *5 ("The absence of party identity and the criminal/civil dynamic eliminate concern that [the plaintiff in the civil case] is simply taking advantage of work performed by the prosecutor [in the earlier criminal case].").[6]

Defendants represented at the hearing that they have unsuccessfully attempted to depose CI Prater despite making significant efforts to do so. The Court emphasizes (and PD Harmon and the parties appear to agree) that this is an uncommon discovery issue in a case with unusual allegations. Upon being ordered to do so during the hearing, PD Harmon revealed that the recordings are of three non-client individuals. The Court finds that the unusual nature of the allegations in this case, combined with the undisputed potential significance of the information in the recordings justify production. Accordingly, and for the reasons explained more fully during the extensive hearing, the Court concludes the recordings are not shielded from discovery under the atypical circumstances of this case.

D. **Protective Order**

In his brief, PD Harmon asserts the recordings "contain information that would implicate

---

[6] Non-party work-product discovery disputes typically involve subpoenas for materials from a criminal **prosecutor's** file, not from the defense. *See, e.g., Lawrence*, 2015 WL 1363281, at *4 ("Many courts have resisted the [work product] doctrine's protection when a prosecutor in an earlier, closed criminal investigation or prosecution objects to discovery in a later related civil suit.") (citing cases). But the Court does not find this difference to be significant under the circumstances of this case, including the unusual nature of Plaintiffs' allegations and the potential significance of the recordings.

8

privacy concerns of the individual clients, such as whether the confidential informant alleges that the sale of a drug, for which he or she was charged, was legitimate or faked using impostors." [Doc. 39 at Page ID # 179]. He requests a protective order be entered requiring the parties to keep any private information on the recordings about his clients confidential. The Court is persuaded the recordings could potentially include some private information concerning PD Harmon's clients, as well as the individuals on the recordings (none of whom have been served with a copy of the motion). The Court will order the parties to confer with PD Harmon and to submit an agreed protective order to address the alleged privacy concerns.[7]

### D. Rule 37(a)(5)

Federal Rule of Civil Procedure 37(a)(5) states that if the court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Defendants do not ask for their expenses. Moreover, the Court finds that the refusal to produce the requested information "was substantially justified, or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5). The Tennessee Rules of Professional Responsibility required PD Harmon to make any and all non-frivolous objections to the subpoena, and he sought counsel from the Tennessee Board of Professional Responsibility before objecting [*see* Doc. 39-1 at Page ID # 182, ¶ 8]. Furthermore, the work-product doctrine is complex, and conflicting caselaw abounds regarding how and when the doctrine applies. Accordingly, the Court finds PD Harmon's response to the subpoena was reasonable and an award of expenses would be entirely unjust.

---

[7] The parties are advised to consult the Court's Memorandum and Order regarding any attempt to file any information under seal [Doc. 3].

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Disclosure of Information from the Public Defender of the Twelfth Judicial District of Tennessee [Doc. 32] is **GRANTED** to the extent it seeks production of the seven audio recordings PD Harmon has in his client files. The parties are **ORDERED** to confer with PD Harmon for the purpose of agreeing on the terms of an appropriate proposed protective order concerning the recordings, which proposed protective order (or proposed protective orders if agreement is not reached) **SHALL** be submitted by joint motion of the parties within **seven days** of entry of this Order. PD Harmon is **ORDERED** to produce the recordings for copying at a mutually agreeable location within **seven days** of the entry of a protective order by the Court. Defendants are **ORDERED** to immediately transmit this Order to PD Harmon.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE