UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

JEREMIAH MYERS et al., )
)
)
      Plaintiffs, )
)
v. ) No. 4:18-cv-39-JEL-SKL
)
A.J. CUNNINGHAM et al., )
)
      Defendants. )

## MEMORANDUM AND ORDER

Before the Court is a motion seeking certain medical records of a non-party witness, Tina Prater, filed by Defendants A.J. Cunningham, Charlie Wilder in his official and personal capacity, and Tracy City, Tennessee [Doc. 130].[1] No response to the motion has been filed, and the time for doing so has passed. E.D. Tenn. L.R. 7.1(a). For the following reasons, Defendants' motion will be **GRANTED IN PART AND DENIED IN PART**.

Defendants seek a disclosure order of Ms. Prater's medical records pursuant to regulations promulgated under the Health Insurance Portability and Accountability Act ("HIPAA"). HIPAA provides privacy measures for "any information, whether oral or recorded in any form or medium

---

[1] While the docket entry labels the instant motion as a motion for a "protective order" [*see* Doc. 130], it appears that Defendants are actually requesting a disclosure order under 45 C.F.R. § 164.512(e)(1)(i).

> The HIPAA implementing regulations contemplate two types of orders: (1) an order under 45 C.F.R. § 164.512(e)(1)(i) from the court expressly authorizing disclosure (a "disclosure order") and (2) a qualified protective order under 45 C.F.R. § 164.512(e)(1)(ii)(B) and (e)(1)(v) (a "qualified protective order"). Where there is no subpoena, discovery request, or other lawful process directed to a covered entity at issue, defendants are seeking a disclosure order from the court . . . .

*Applebaum v. Target Corp.*, No. 11-15035, 2012 WL 12930666, at *2 n.1 (E.D. Mich. June 8, 2012).

1

that is created and received by a healthcare provider and relates to the past, present or future physical or mental health or condition of an individual." 42 U.S.C. § 1320d(4); *Petties v. Copeland*, No. 16-10743, 2016 WL 7010499, at *1 (E.D. Mich. Dec. 1, 2016). Under subsection (e)(1)(i), a covered entity may disclose personal health information in the course of any judicial or administrative proceeding in response to an order of a court or administrative tribunal so long as the covered entity discloses only the personal health information expressly authorized by the order. 45 C.F.R. § 164.512(e)(1)(i); *see, e.g.*, *Lewis v. United Parcel Serv., Inc.*, No. 3:04CV259-S, 2005 WL 8175779, at *2 (W.D. Ky. Feb. 8, 2005). The court's disclosure order must preclude the party obtaining the information from using it for purposes other than the litigation and must require that any materials acquired be destroyed or returned to the provider at the end of the litigation. 45 C.F.R. § 164.512(e)(1)(iv); *see also A Helping Hand LLC v. Baltimore County, Maryland*, 295 F. Supp. 2d 585, 592 (D. Maryland 2003).

Ms. Prater is a nonparty whom Defendants anticipate will be "the key witness" for Plaintiffs at trial [Doc. 130 at Page ID # 1072]. Defendants seek access to Ms. Prater's medical records during the three-month period from May 1, 2019, to July 31, 2019, to determine whether she lied when she offered medical excuses several times over the course of their interactions [*id.* at Page ID # 1073]. Most notably of these occasions, Ms. Prater did not attend her deposition when first scheduled [*see* Doc. 101 at Page ID # 989]. After rescheduling, her deposition was taken, during which—Defendants represent[2]—she testified under oath "that she missed the original deposition because she had been in the hospital for female issues in which she was given eight pints of blood the day she went to the hospital, another two pints of blood the next morning, and two pints before releasing her." [Doc. 130 at Page ID # 1073].

---

[2] Defendants did not attach an excerpt of Ms. Prater's deposition to their motion.

Defendants further represent that Ms. Prater originally assured the parties she would provide her medical records as proof of her hospitalization on June 26, 2019, but that she declared at her eventual deposition that she was not willing to sign a medical release to verify her representations about her medical issues and hospitalization [*id.* at Page ID # 1074]. Defendants explain the basis for their motion as follows:

> The intent of this motion is to verify that Ms. Prater was in fact, in the hospital when she claims and for the reasons she claims. Being the key witness in this case, Ms. Prater's testimony and credibility are highly relevant and central to both the Plaintiffs' and the Defendants' cases.
>
> Counsel for These Defendants is sensitive to the privacy concerns when looking into a witness's medical history. It is for that reason counsel for These Defendants is asking this Court to allow access to Ms. Prater's medical records for the limited three-month period around the June 26, 2019 deposition date. Further, the proposed access order includes a protective order which limits the retention and dissemination of the limited medical records.

[*id.*]. Defendants do not address in their motion the relevant legal standard for the Court's consideration.

Defendants served a copy of the motion upon Ms. Prater by regular U.S. Mail at her address in Kingston, Tennessee [*see id.* at Page ID # 1076], but she has not responded to the motion or otherwise communicated with the Court, and the Court is unaware of whether Ms. Prater has had actual notice of the contents of this motion. Given Defendants' representations that Ms. Prater was unwilling to sign a medical release at their request, the Court will assume that Ms. Prater opposes the motion on privacy grounds.

Federal Rule of Civil Procedure 26 governs the scope of discovery, unless otherwise limited by court order. Fed. R. Civ. P. 26(b)(1). As Rule 26 states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

3

expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.*

On the current record, it is undisputed that the contents of Ms. Prater's medical records may be probative of her character for truthfulness or untruthfulness. *See Gale v. City of Tecumseh*, 156 F. App'x 801, 808 (6th Cir. 2005) (Holding Rule 608(b) of the Federal Rules of Evidence provides, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness . . . ." It is "squarely within the court's discretion to determine whether to allow cross-examination" under Rule 608). The only issue before the Court today, however, is whether the records are discoverable.[3]

It is undisputed that Ms. Prater's credibility as a witness is pertinent to Defendants' defense. This case includes federal and state-law claims of malicious prosecution stemming from Tracy City Police Department's arrest, and the subsequent charging, of Plaintiffs Jeremiah Myers and Clarissa Myers for the sale of a Schedule II drug [Doc. 52 at Page ID # 332]. These charges,

---

[3] Under appropriate circumstances, a court may, on cross-examination, allow prior specific acts "to be inquired into if they are probative" of "character for truthfulness or untruthfulness." Fed. R. Evid. 608(b)(1); *see also* Fed. R. Evid. 404(a)(1). A court considering whether to permit or prohibit such cross-examination must take into account the balancing test of Federal Rule of Evidence 403. *Tecumseh*, 156 F. App'x at 808; *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury."). "Consequently, there is a requirement of a 'high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination." *United States v. Hatcher*, No. 3:05-CR-113, 2011 WL 13185805, at *8 (E.D. Tenn. Dec. 20, 2011). This Order contains no judgments of the Court as to admissibility or relevance at trial. The Court discusses issues of admissibility and relevance only to inform its analysis of whether the requested records fall within the scope of discoverable material.

4

which were later dismissed, were largely based upon Ms. Prater's work as a confidential informant for Tracy City Police Department. In her affidavit, Ms. Prater makes the following averments about Defendant Wilder's conduct regarding her work as a confidential informant:

> 8. I told Charlie Wilder that I could not get [Jeremiah Myers and Clarissa Myers] to sell me pills.
>
> 9. Charlie Wilder then instructed me to get other people to pretend to be Jeremiah Myers and Clarissa Myers and pretend to make a purchase while it was audio recorded.
>
> 10. Charlie Wilder also instructed me to use any pills as part of the fake drug buy so long as they did not look like a Tylenol.
>
> 11. I did as instructed and got two people to pretend to be Jeremiah and Clarissa Myers and recorded fake drug buys with Charlie Wilder's knowledge and instruction.
>
> . . . .
>
> 13. Charlie Wilder also asked me to record fake drug buys for other people, and I recorded those other fake drug buys at Charlie Wilder's direction.

[Doc. 73-4 at Page ID # 743].

Considering the obvious importance of Ms. Prater's testimony to this case, her conduct during her deposition, as well as the very low burden to a hospital of releasing medical records, some subset of these records is sufficiently relevant and proportional to the needs of the case. *See* Fed. R. Evid. 26(b)(1).[4] Obtaining the medical records might allow Defendants to determine whether there is a good-faith basis to question Ms. Prater about her sworn testimony and health excuses for missing her first deposition in order to probe her character for untruthfulness. The Court need not determine whether any evidence related to Ms. Prater's health excuses would be

---

[4] This Order contains no judgments of the Court as to admissibility or relevance at trial. The Court discusses issues of admissibility and relevance only to inform its analysis of whether the requested records fall within the scope of discoverable material.

admissible or whether Defendants will be allowed to question her about them at trial because the 2015 amendments to Rule 26 "cement[ed] the need for district courts to consider relevance and proportionality (rather than reasonable calculations regarding admissibility) as the touchstones in setting the scope of discovery." *Jones v. Johnson*, 801 F. App'x 338, 351 (6th Cir. 2020) (Readler, J., concurring in part and dissenting in part).

Furthermore, and although not raised by Defendants, Ms. Prater's medical records are not privileged. As the Court is exercising federal-question jurisdiction in this matter, rather than sitting in diversity, any state-law physician-patient privilege or medical records privilege does not apply. Fed. R. Evid. 501. Federal Rule of Evidence 501 provides:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
>
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

The U.S. Court of Appeals for the Sixth Circuit has not recognized a federal physician-patient privilege and has declined to apply state-law privilege even in cases involving both federal question and pendent state-law claims. *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (collecting cases). Some courts outside this circuit have discussed the possibility of recognizing a physician-patient privilege in some federal-question cases; however, even those courts have acknowledged a strong federal interest in refusing to apply a physician-patient privilege in federal-question cases and have specifically declined to recognize such a privilege in federal civil-rights cases. *See Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012); *Bryant v. Armstrong*, 285 F.R.D. 596, 603–04 (S.D. Cal. 2012) ("State privilege law does not govern discovery issues in

6

federal § 1983 cases."); *Green v. Fulton*, 157 F.R.D. 136, 139 (D. Me. 1994) (finding that, because the "gravamen of the plaintiff's complaint concerns a violation of his federal constitutional right to be free from the use of excessive force[,]" the case involves primarily a federal civil rights question and thus federal common law privileges should apply); *Miller v. Pancucci*, 141 F.R.D. 292, 297–99 (C.D. Cal. 1992). In sum, no physician-patient privilege applies in this case.[5]

On the other hand, to the extent this case implicates any privacy rights of Ms. Prater, arising from the U.S. Constitution, HIPAA, or other origin, the Court must "examine the potential conflict between the asserted right of access to medical records and the patient's right to privacy." *Fisher v. City of Cincinnati*, 753 F. Supp. 692, 694 (S.D. Ohio 1990) (citing *Whalen v. Roe,* 429 U.S. 589 (1977) (employing a balancing test). A patient's right to privacy, however, is not absolute. *Id.* (citing *In re Zuniga*, 714 F.2d 632, 641 (6th Cir.), *cert. denied,* 464 U.S. 983 (1983)); *United States v. Sutherland*, 143 F. Supp. 2d 609, 611–12 (W.D. Va. 2001). Instead, "[t]he privacy interest in one's confidential medical records is conditional and a limited impairment of the right may be allowed if properly justified." *Hutton v. City of Martinez*, 219 F.R.D. 164, 166 (N.D. Cal. 2003) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995)); *Heilman*, 287 F.R.D. at 470 (acknowledging that the defendant's medical history was relevant and there is no federal physician-patient privilege and consequently allowing limited discovery of relevant medical information). When the medical records of a nonparty are sought, "there are significant privacy concerns in the disclosure of a non-party's private medical information that weigh against its

---

[5] Furthermore, it is not clear that the records being requested, and/or that the Court will ultimately order disclosed, would fall within any physician-patient privilege. *See In re Zuniga*, 714 F.2d 632, 641 (6th Cir.), *cert. denied,* 464 U.S. 983 (1983) (stating that the identify of a patient and the dates and length of her treatment are not facts that generally fall within physician-patient privilege (citing McCormick On Evid. § 100 (2d ed. 1972))).

7

production." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *4 (W.D. Ky. Jan. 7, 2020).

Here, the Court must balance Ms. Prater's privacy rights against Defendants' need for the information they seek. *See In re Zuniga*, 714 F.2d at 641; *Heilman*, 287 F.R.D. at 470; *Fisher*, 753 F. Supp. at 694. As addressed above, although Ms. Prater was served with and did not respond to Defendants' motion, the Court nonetheless assumes that she would prefer her medical records not be released. However, given that Ms. Prater voluntarily offered this, and more detailed, information about her health and hospitalizations to Defendants, she has to some extent put this information at issue, rendering her privacy interest in this information somewhat less great than if she had not voluntarily offered her own health-related information. Indeed, at some point she represented to Defendants that she was willing to release her medical records to prove the truthfulness of her excuses. As for Defendants, they have demonstrated some need for evidence which—at least based upon their representations—they have reason to suspect will illustrate Ms. Prater's untruthfulness in her deposition.

The Court is persuaded that a narrowly tailored, HIPAA-compliant order for the purpose of determining the truthfulness of Ms. Prater's health-based excuse for missing her first-scheduled deposition, to which she testified under oath, is warranted. However, the Court will limit the order to require the hospital or facility at which Ms. Prater claimed she received treatment to release only the fact of whether Ms. Prater was present at the hospital at any time on the day of her scheduled deposition, the day before, or the day after.

The released records shall exclude, or shall be redacted as to, any other information, including the reason for any hospital admission or visit or the treatment received. In considering proportionality, whether Ms. Prater had a valid medical excuse is much more probative of her

8

truthfulness than whether her representations as to the exact nature of that excuse were fully accurate. Similarly, the truthfulness or untruthfulness of excuses Ms. Prater made while not under oath and penalty of perjury is much less probative of her credibility as a witness. For that reason, the Court does not deem it proportional to the needs of the case or deferential enough to Ms. Prater's privacy to order disclosure of a broader swath of medical records, such as medical records of hospital visits or treatment on other dates. Furthermore, a broader collection of medical records would likely be cumulative.

It bears emphasizing that the unusual facts and circumstances of this case are what lead the Court to take the uncommon step of ordering the disclosure of a nonparty's medical records for the purpose of obtaining information about her credibility. In the run-of-mill case, such an order would likely undervalue the nonparty's privacy and overvalue the needs of the party seeking discovery. However, several factors make this case an exception. First, Ms. Prater has not responded to the motion. Second, Defendants have shown more than a mere possibility—indeed, a substantial likelihood—that Ms. Prater's excuses, over the course of their interactions with her, were false or, at least, highly exaggerated. Third, the information which the Court will order the hospital to disclose is much less private and sensitive than health records generally, as it will only include the fact of whether or not Ms. Prater was present at the hospital on each of three days. Certainly, the information that will be released is much narrower than the information Ms. Prater herself freely and voluntarily offered as an excuse for her absence. These case-specific circumstances—and not a general assessment of the relative importance of a nonparty's interest in keeping her health information private—have informed the Court's ruling.

Accordingly, Defendants' motion [Doc. 130] is **GRANTED IN PART AND DENIED IN PART**. Defendants are hereby **ORDERED** to submit a proposed disclosure order consistent with HIPAA and this Order **within seven days** of the entry of this Order.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

10

Case 4:18-cv-00039-JEL-SKL   Document 131   Filed 10/13/20   Page 10 of 10   PageID #: 1090